This case on the docks at 2-2-0-2-7-7 Fabricated by the President of the United States, the Board of Trutees of the Kildeer Police Pension Fund and by Defendant's affiliates, Mr. Geoffrey A. Goodfall, Mr. William B. Eugiepio, and by Defendant's affiliates, the Board of Trustees of the Kildeer Police Pension Fund, Mr. Geoffrey A. Goodfall, and by Defendant's affiliates, the Board of Trustees of the Kildeer Police Pension Fund. Are the four parties ready? Yes, Your Honor. Mr. Giudicicicio, go ahead. Good morning, Your Honor. If you will please the Court, my name is Wayne G. M. Pietro. I'm the attorney for Mr. Kropp. This, obviously, is a case about a pension. Mr. Kropp was injured on the job in December of 2013. He was kicked by an unruly arrestee, immediately went to the hospital, to the emergency room, where he was treated, given a collar to wear, and told to get other treatment from his physician, which he did. Very shortly thereafter, he filed a petition for a duty disability pension, and for various reasons, there were no proceedings in that case for about a year after the petition was filed. Excuse me, Counsel. While plaintiff's application for a disability pension was pending, he filed a grievance asking to be reinstated as a patrolman. So, isn't that inconsistent? That is, was he disabled from police work, and still at the same time, saying that he could come back, or wanted to come back to work as a police officer? Well, I don't think so, Your Honor. As I understand it, the reason for that petition was so that he could get workers' comp payments while he was disabled, and there were two different things going on. He had this workers' comp petition going on, and this petition for the pension. Well, then he's giving mistruths to someone, either work comp or the pension case, right? No, I don't think so. No? I don't think so at all, Your Honor. In fact, the pension board used the testimony, or the findings of the doctor that... From the work comp case. From the work comp case, Dr. Bernstein, who in fact found that Mr. Kropp was disabled, until then somebody showed him a whole bunch of videos that we don't even know what they are, and then, and these videos were taken, apparently, from what Dr. Bernstein said in his letter, before he examined him, and so I don't understand how Dr. Bernstein could say, I examined a guy, I found him disabled, now somebody showed me something else that happened before I saw him, and now he's okay? I mean, I don't understand it. I don't see how that's a valid or viable opinion. Was there an objection to the videos? Well, there was not a formal objection, but what happened was, the board, the pension board and the village, and the attorney for the pension board were looking at these videos in the absence of Mr. Kropp or his attorney. Well, they've been admitted. I'm sorry? Excuse me, they've been admitted first, though. Isn't that correct? Well, I'm not sure that they actually were. They were on the list of exhibits that were tendered, and they were submitted together with the report of Dr. Bernstein, correct? Right, they were submitted, but what's very interesting, to say the least, is there was a report from the person who supposedly took these videos. That report says absolutely nothing about six or seven of the videos that were actually submitted. There were certain videos that the report says, I took them on this date, and this is what was going on, but then there's about four or five other videos that are in the group that the report says absolutely nothing about. There's no authentication. We have no idea what they were. I mean, it's not even supported by the documents that were supposed to have authenticated these reports. There were videos dated January, these are all in 2014, January 26, 27, February 3, March 13, 15, and 17, all of which there's nothing. What do you mean nothing? There's nothing in the report that says what they are. They're just, they're here, with no support whatsoever. And of course, that's my main, one of my main arguments is, even though there was no formal objection to these things on the record, they weren't given to Mr. Kroc and his attorney in advance. They were there at the hearing, but now the board is having an ex-party discussion or what have you with the attorneys for the village watching these videos in the absence of Mr. Kroc and his attorney, and he never gets an opportunity to discuss them or talk about them or anything because he has no idea what the board is seeing. Well, he testified at the hearing, did he not? We testified at the hearing. And didn't he have the opportunity at that point to certainly try to comment on these videos or ask for a continuance for if he hadn't seen them before he testified, certainly he could have asked or his attorney could have asked for a reasonable period of time to view them so that they could be discussed in his testimony. But they were never shown during the proceedings. Well, what rule is there or case law or administrative rule that indicates they have to be shown once they're admitted that they have to be shown during the hearing? Well, if the board's going to rely on them and the board is going to watch them in the presence of the other side, that seems to me like ex parte communication, Your Honor, and that's clearly a violation of due process. They used them to cross him, correct? I'm sorry? They used to cross him, the substance of the videos they used to cross him. I guess they asked him a few questions about that. Yeah, nothing very extensive, but there was a little bit about that. But, you know, there are some things... The objection you're making here was not made at the time, correct? It was not made before the board. Isn't it? It was not made before the board. Isn't it waived? No, I don't think it's waived. There are some things that are so bad and such a violation of due process, especially in an administrative hearing that you cannot waive. And I think this is one of those kinds of things. When you take it in the context of everything that this board did, it is clearly a pattern of this board that they were not going to give this man a fair hearing, and they did not. You also, in your brief, you suggested the videos are hearsay. Why is that? Why would they be hearsay? Because there's nothing to authenticate them, Judge. They don't speak... Authentication is a different question than whether or not something is hearsay. Well, that's one testimony before anybody. Isn't that the definition of hearsay, Judge? That's what they taught me in high school. Hearsay ordinarily applies to statements. However, the hearsay rule has been applied to conduct as well as statements. And conduct of a party opponent that could infer guilt or impeach a party is not hearsay. Would you agree? He's a party, is he not? He's the petitioner. Of course. So those videos, even if they were to be characterized as an out-of-court statement or kind of could be used against him, they're admissions because they're inconsistent with his testimony. They're not admissions unless somebody proves and shows that they're him. And there never was anything like that. Well, Dr. Bernstein reviewed them and said that they were him in his report, correct? We don't know what Dr. Bernstein saw. Doesn't his report say that he saw the defendant and the videos? He said he saw some videos. And he's testifying as an expert witness, correct? Well, he's not under oath. He wrote a report. Right, but it's received as an expert, he's a physician, an expert who examined the defendant. So why doesn't, why isn't that sufficient to lay an adequate foundation? He identifies the videos in the report and he says, he does, he says he viewed videos of your client. But what videos? What day? When, where and how? There is no adequate explanation of what Dr. Bernstein saw. The time to object on those grounds are past. Well, as I said, Your Honor, I think this is just so outrageous that you cannot waive that kind of objection. And you add that to the fact that the board, the plaintiff made a motion, before there was any hearings of any kind, the plaintiff made a motion to amend his petition to add hearing loss and injury about this very incident that was the subject of his petition. Psychiatric illness and injury arising from this very same incident that was in his original petition. And then chronic knee condition. I'm sorry? No, go ahead. I'm sorry. And then a chronic knee condition, which he claimed was non-related. The board denied that petition without any reason or any statement whatsoever. Counsel, what authority is there that requires an oral ruling? There is, there are two to four pages in the written decision of the board that cover this exact issue and have the complete ruling of the board with respect to this issue. So what authority are you submitting to us that requires the board to offer an oral disposition with regard, or oral ruling? There must be a reason given for the ruling at the time the ruling is made. At the time? Given something else two years later. Well, so you have no authority that requires that. Is that right? Well, there's a number of cases that we've cited that due process requires a reason for the ruling. At the time? Absolutely. It doesn't make any sense to say, well, we'll tell you what we're doing later. They ruled. They said it was denied. Right. Okay. Without any basis. All right. And then they bring in evidence from Dr. Lamy, for example, and Dr. Butler about the things that are in the amendment and his request to amend. So I don't, you know, the doctors looked at the plaintiff, or Mr. Kropp, for the things that are in his petition to amend. But then they say, you can't present those things to us after they had an independent medical examination by their doctors on these very same things. Do you have a case that suggests that the Relations Backed Doctrine applies to administrative proceedings? We've cited some in our brief. I can't tell you what it is off the top of my head, but absolutely. We have cited cases in our brief. Well, you argued that the Code of Civil Procedure 616B applies along with the Loyola factors, but the board has to follow the pension code, right? And it's the pension code that indicates that these claims had to be filed while he was a police officer, and they were not. Oh, Your Honor, this whole idea that Mr. Kropp was not a police officer at the time of the amendment is just absolutely outrageous. Well, it's statutory. He was never discharged properly from his position as a police officer. They never had any charges filed against him. They never gave him a hearing. They just said, you're no longer working for us. That is the quintessential violation of due process. And maybe you can clear this up for me, but when Chief Belinsky testified, didn't he testify that they asked him to come back to work after he was released from the work comp claim and he never came back and never gave him any documentation, any medical documentation as to why he couldn't come back? Well, that's what he said. But here's the letter that he wrote on July 30th. This is Chief Belinsky says, based on the information the village has received today, it appears that you are not capable of performing the essential functions of your job and that there is no way of determining when, if ever, you will be able to work and perform the essential functions of your patrol officer position. We have never received any information for you or your doctor that contradicts this assessment or otherwise suggests a definitive date by which you will be able to perform your job duties with or without accommodation. In addition, the village has not received any information. There's a reasonable accommodation that would enable you to safely perform the essential duties of your patrol position. The village does not have any permanent light duty position. So I'm going to say, on the one hand, you're disabled and you can't do your job and therefore I'm going to move that you be dismissed and then turn around and say, you haven't provided me with anything that says you're disabled. He says it there. You're disabled. Excuse me, Counselor. For the record, what are you reading from? And what's it identified? Oh, absolutely. What's the date of that letter? It's dated July 30th of 2014 from Officer, Chief of Police Polinski to Officer Cropp. Yes, it's one of the village's exhibits. So, I mean, they talk out of both sides of their mouth all over the place. They say that, well, he's had all these other injuries and therefore his disability can't come from this one incident while they admit that he's gotten treatment after treatment after treatment while he was an officer of this department and acknowledge that he's had all these injuries. And then they say, well, there's no evidence that he's been disabled. Well, but if the relation back doctrine applied, it has to relate to the same set of operative facts. It has to have been related to the incident in December 2013. Certainly the knee complaint was not and that was conceded. Is that not correct? The knee was not. That's right. Everything else was. And the psychological difficulties arose after the termination. And the record, I believe, reflects also that some of the other incidents that the plaintiff experienced with regard to his service as a police officer were the cause for the psychological difficulties and some of his flashbacks that required treatment. So again, that wasn't certainly solely related to the December 2013 incident, at least partially. They were. I mean, Dr. Steiner specifically said these were related to this particular incident. It's a culmination of a number of things that happened while he was working that ended up with this one particular incident. I guess my time is up here. Unless there are any further questions. You'll have time. Thank you. Thank you. Good morning, your honors. My name is Jeff Fidlow. I represent the Kildare Police Pension Board. I'm going to take about 10 minutes and I want to address the bias issues as well as the ex parte communication issues, due process issues, as well as the motion to amend the disability application. Ms. Heitzelman for the village is going to address the issue of the plaintiff's failure to name the village as a defendant and the effect that that may have on the complaint. I think the first thing that I'd like to just go to is the issue of bias and due process. The plaintiff made strong arguments that the pension board violated his client's or the plaintiff's due process rights. That's not true. I mean, there were I think seven hearings that took place in this particular case. That's a substantial amount of process. Um, all of the exhibits, the pension board exhibits, the village exhibits, and the plaintiff exhibits were all exchanged prior to any hearings with all of the parties in the case. Even the videos. Even the videos. The videos I believe were village exhibits 20 A, B, and C. And without question, the plaintiff's counsel received all of those prior to the hearing. His complaint is though that they were viewed by the pension board outside of the presence of his client and the attorney representing his client at that time. Right. That is incorrect. And I want to set forth how this takes place in every disability pension hearing that I've done for multiple years, particularly with the plaintiff's counsel at the time that the hearing took place. I get all the pension board exhibits together. I say, Applicant's attorney, give me all of your exhibits, which Mr. Wysocki did. Village, give me all of your exhibits, which Ms. Heitzelman did. So there are thousands of pages of documentary or documents there, as well as three videos. I assemble all of those exhibits together and I provide them to my trustees. And I say this, you can review this to prepare for the hearing. Do not distribute it to anybody. Do not discuss it with anybody. Keep it strictly confidential only to prepare for the hearing. We come to the hearing and the very first thing we do, you'll see in the transcript, the very first thing, are there any objections plaintiff's counsel or applicant's counsel at the time to any of the exhibits contained? Village exhibits, pension board exhibits. The answer to that question is no. No. Now, if there was an issue and they said, we object to the videos, we object based on authentication, then we would have had, I would have said and Ms. Heitzelman for the village, you need to authenticate the videos. Call a witness and bring the witness in. We can't bring the witness in. We can't authenticate the videos. Very well. We sustain the objection. This is out. Pension board, you can no longer consider this when you render your decision. You won't see it in the decision in order. And certainly if we relied on it in our decision in order, we would get reversed by the trial court. We'd get reversed by this court. That's not what happened here. So the idea that these were surreptitiously reviewed between Ms. Heitzelman and myself is categorically incorrect. Mr. Wysocki was there. He had a chance to object. He didn't do it. He had a chance to say I want to show these videos and point some things out. He didn't do that either. Was there a report tendered also that described what was in the videos? I think there's a surveillance global options report that was one of the village exhibits, also not objected to. But that had dates and times of what was taking place, correct? I believe that did, Your Honor. I believe that did. So to the extent that counsel said there was no foundation for when these were taken, the report was in the record, correct? It's in the record and it's not objected to. And the Supreme Court has said that the Pension Board can consider all of that that's not objected to as substantive evidence, and that's what it did. And let's say there were some bias and there were some issue with respect to the videos. The question then becomes if there's error, what is it? Is it reversible error or is it harmless error? And the issue here is that it would be harmless error because there was no objection to the three IME reports in this case. There was no objection to Dr. Bernstein's report. Dr. Bernstein, Dr. Lamme, Dr. Butler all say that the plaintiff is not disabled due to a cervical injury. Dr. Deutsch says he's disabled, but only because he underwent a fusion in 2008. He's disabled, but he's malingered. His subjective complaints do not comport with the objective findings. So there would still be countless amounts of evidence in this case to support the Pension Board's decision such that it wouldn't be against the manifest way of the evidence. What have you got to say about July 30th, 2014's Chief Belinsky's letter? I don't have much to say about it. I mean, what I have to say about it is that the village can write a letter saying, based on what you're telling us, it appears that you're unable to do the job. It appears that you were unfit for duty as a police officer. Fitness for duty is very different from disability. In this court, I think in Edwards versus Addison Fire Protection District Firefighters Pension Board and Dalrick versus the village of Downers Grove, it says those are two separate inquiries. So the village can say you're unfit for duty. We're going to terminate you. And the pension board, based on the same evidence, which they review and their doctors review, can come back and say you're not disabled. This court, the second district that's held, that is not inconsistent. So I think that's what was going on here. And he said, I'm not going back to work. I can't do it. OK, we have to find you. And to say that he was never discharged is categorically incorrect. He was. August 10, 2014, page C1383 of the record is the letter from the chief saying you are hereby terminated. Now, whether he received notice of it, whether it was proper, whether it was legal, this court held in Eschbach versus the McHenry Police Pension Board, that that is not the pension board's concern. We are separate legal entities. If the village fires somebody, we are stuck with that decision, even if it's illegal. The question is whether an arbitrator comes back and says this was illegal, put him back to work, or your others come back and say in a separate lawsuit, this was illegal, put him back to work. That's binding on us. But we can't sit there and say you didn't get the proper due process to this person when you fired him. That's not the pension board's job. You fired him. OK, he's no longer a police officer. And that's what brings me to my third point with respect to the motion to amend. I don't think that the Relation Back Doctrine under Section 2-616B of the Code of Civil Procedure applies. I cited the American Airline case. I think the more appropriate inquiry is pursuant to the plain language of the pension code, which is, was this person a police officer under Section 3-106 of the pension code when they applied for these entirely new claims? And the answer to that question is no. The motion to amend came after he was terminated on August 10, 2014. He was no longer a police officer on that date. So I think that's the relevant inquiry. If your honors determined that the Relation Back Doctrine does apply, or could apply, I guess, at the question, the Relation Back Doctrine only applies based on the same transaction occurrence test, that is, the right to amend in the relation back of an amendment depending on whether the original complaint furnished to the defendant, in this case, the pension board, all the information necessary for him to prepare a defense to the claim subsequently asserted in the amended complaint. Now, there is nothing in the January 8, 2014 disability application that talks about a possible psychiatric disability, a disability based on needs, or a disability based on hearing loss. In fact, page two of that report, there's a question that says, if you're applying for a line of duty mental disability pension, list a specific act of duty that caused it, citing the Robbins versus Carbonado Police Pension Board case. The plaintiff wrote not applicable. It only became applicable not because of some sort of technical malfunction, but because the plaintiff realized the merits of his case were going down the tubes. I mean, he applied after two doctors came back and said, one said you're not disabled, one said you're disabled, but there's no causation you're malignant. And then you got the third report that said you're not disabled. And at that time, he starts going and scrambling for cases. Scrambling. But the fact of the matter is, is that even if this doctrine did apply, he's trying to bring entirely new claims that we had no notice of. So it's new injuries. It is new injuries. And so that doesn't even satisfy the sufficiently close relationship test. Well, how are they new injuries if he had been getting treatment all the time that he was a police officer? Let's eliminate maybe the psychiatric for the moment. But he was getting treatment for some of these. Right. And the question is whether the treatment that he was getting and the injuries that were there that we were somehow put on notice as of January 2014 in the original disability application that he was receiving treatment for those and that that may be an issue that's put into play. That's the question. The answer to that is no. It wasn't there. It was not there. Even if this test does apply, which I don't think that it does, you still have to go on to the Loyola Academy factors and ask yourself the four questions. And the answer to all those questions has to be yes, according to the Supreme Court. Did the amendment purely defective pleading? I don't think that it does because he's not a police officer. It fails the transaction test. And the record doesn't even support the amendment. I mean, I can read this case and sit here and say, this is what's going on. This person is claim shopping because their claim went down the tubes. And that's not what the pension code is for. Would it party sustain prejudice if this thing gets remanded back and we have to deal with these three other issues? We're talking about three doctors for each of these conditions. We're talking about psychological testing. We're talking about in excess of probably $50,000 in medical fees, not to mention attorney's fees to go back and adjudicate all of this. When I just don't think that's what the pension code ever intended. So I think this would fail the Loyola Academy factors. And to say that we never put forth any sort of reason for denying the motion to amend, that's categorically untrue. It is set forth in writing in a written decision and order based on the how case. There's nothing that requires us to come out of closed session and open and make an oral announcement as to why we're ruling the way that we did. Well, wouldn't that comport with due process and the notice that they were entitled to? An oral ruling and or the reason for the ruling there. Your Honor, there I assume that the pension board could do that, but there's no rule case that I'm aware of that requires it. To the contrary, there's the how case that specifically requires us to put down our determinative reasoning in writing, which is what we did. When the decision was announced, was there a request for an oral ruling? No, Your Honor. Not that I recall. It would be reflected in the transcript, but I don't recall a reason. That was, that was, that was, I don't recall requests for a reason. And if I'm mistaken there, I apologize, but I don't recall it. There are no other questions. Thank you very much for the court's time and attention today. Good morning. Evette Heisenman on behalf of the Village of Kildare. I agree with the comments that were made by Mr. Goodlow. I wanted to address a couple of questions that were raised and then I will address the two issues that I was selected to discuss, hopefully in five minutes. With respect to Mr. Croft's termination, in 2014, the Village of Kildare, I would like to say, turned itself inside out, trying to communicate with Mr. Croft. We sent him letters. In fact, I can tell you, and although I cannot cite to the provision in the transcript, I can tell you that the chief of police pasted things to his door in order to communicate with him because we could not get him to talk to us and tell us whether or not he was capable of coming back to work or not capable of coming back to work. We were ready and willing to have him come back because the Village of Kildare is a police department of five or six patrol officers. We need people. And Mr. Croft was an experienced officer. We wanted him to come back. He was actually brought back from layoff, I think six to eight months prior to his injury. So to say that the Village of Kildare did not make efforts to communicate with Mr. Croft to try to have him come back would be an understatement or an erroneous statement. Once it was clear that he was not cooperating with us, he could make his own doctor's appointments, but I believe he received five of our workers' comp appointments. The Village took steps in order to terminate his employment so that he could move forward with replacing him. And that's why he received the letter that was due July 30th of 2014. Mr. Goodlow was correct. The case law is that fitness for duty is not the same as being disabled. He was telling us he couldn't come back to work and that he wasn't coming back to work. And if that's the position he was taking, then the Village of Kildare accepted that and moved forward with it. He was given the chief has the authority under the collective bargaining agreement in order to terminate Mr. Croft's employment. He did that. He communicated with him. A grievance was filed. A grievance meeting was had and then nothing. So to the extent that this argument that we didn't follow the process, we didn't terminate him correctly, we didn't do what we were supposed to do. It's incorrect, number one. And number two, the ball was in Mr. Croft's court. If he wanted to go to arbitration and litigate the issue of his termination, he could have done that. He didn't do that and he hasn't done that to date. That's with respect to the termination issues. I also can say that with respect to the hearing procedures, again, all of the discovery and the documents that we had were turned over to Mr. Wysocki. I sat in the kitchen at the Village of Kildare with Mr. Wysocki and Mr. Goodloe and we went through every single exhibit and I was asked and Mr. Wysocki was asked whether or not there were any objections to any of the document or evidence or the videotape that was being presented before the hearing and the answer was no. And then we went in, we went on the record and we reiterated that. That was just the procedure, frankly, that Mr. Goodloe follows all the time and in this case. To the extent that the Village and the Chiefs are showing these videos to the pension board without the presence of the applicant's attorney or the applicant, it's just simply not true. It didn't happen. I can tell you that I set up the video equipment prior to anyone coming because we had a screen and a videotape and I'm an attorney, I'm not technically semi. So it took me a while, but to say that we showed, it just didn't happen. The two topics that I was to address with you were the issue of whether when Mr. Kropp filed his original complaint for administrative review, he did not identify the Village as a party in those proceedings. Under 735 ILCS 53-107, there are very limited provisions for amending a complaint for administrative review and we do not believe that the Village and the amendment in this case comports with that statute. If you look at section A, the only time that amendment should be allowed is when the applicant or the plaintiff identifies an agency but fails to identify an employee or agent of that party or identifies the employee fails to identify the agency. It does not provide for a broad-based amendment to a complaint for administrative review. The administrative review law is very specific, has specific procedures, and failure to file a complaint within 35 days waives the right to do so and waives the right to add additional parties. I just wanted to ask one question. Did you file a notice of cross-appeal with respect to this issue? I believe it was contained in our brief. Right, but then how is it that you can raise the issue without filing a notice of cross-appeal? If we did not do that, then I'm at a loss to respond to your question. What was the second issue you were supposed to discuss? I was going to talk about the manifest way of the evidence. I know Mr. Goodloe talked briefly the number of cases that were filed and the number of positions that support the finding that Mr. Krop is not disabled. Unless you have any questions with respect to those findings or those positions, decisions, I will stop. Thank you. Mr. Giampinco. Well, as to the amendment of the complaint in the circuit court to add the village of Kildare, 735 ILCS 5-3-107A says, if during the course of a review action, the court determines that an agency or a party of record to the administrative proceedings was not made a defendant as required by the preceding paragraph, then the court shall grant the plaintiff 35 days from the date of the determination in which to name and serve the unnamed party. The statute clearly says what was done below was proper. The plaintiff has a right to add an additional party. Mr. Krop filed his original complaint pro se once he got counsel. Even before the court was required to make this determination, we amended the complaint to include the party. It's clearly within the statute. Your Honor, I had asked before if there were any cases that say that the relation back doctrine applies here. And the cases that we've cited, these are in our reply brief on pages seven and nine. Our Porter v. Decatur Memorial Hospital, an Illinois Supreme Court decision from 2008, and Ingray Olympia Brewing Company securities litigation. It's a federal case. That's on page nine of our reply brief. 612F sub 1370. It's a district court case. The doctors. Every doctor that examined Mr. Krop except Dr. Lammy said he was disabled in one way or another to one extent or another. Dr. Lammy, and first of all, these independent medical examiners weren't given all of the plaintiff's medical records as all the records show. They said, well, I didn't get this record. I didn't get that record. So I don't know what to say about this. And I don't know what to say about that. Lammy is the only one who said he was not disabled. And all Lammy said was, well, his cervical spine does not make him disabled. I don't have enough information about any of the other stuff to give you an opinion of any kind. He does not contradict the statements by Dr. Steiner, who says that he cannot meet the physical demands of a police officer due to his back, neck, jaw, knee, and spine problems. He does not contradict the statements of Dr. Sitow, who had treated him for years and years and years, and said this man cannot perform the duties of a police officer. He is fully disabled. Dr. Deutsch said that he's disabled. He said it was due to a different reason. It was not related to this incident, but that he was fully disabled. And Dr. Butler, you read his report and you're trying to figure out what is Dr. Butler really saying? Because he says in his report, the act of restraining the arrestee was an act of police duty that caused his injury and resulting disability. That's a direct quote from Dr. Butler's report. He then says, well, I don't think it's continually disabling. He may be, he can return to work on light duty, but as they have said again and again and again, there is no light duty. We can't do that. But I mean, Dr. Butler's report is, I don't think, worthy of much of anything because it's so contradictory. You can't really tell what he found. So the credible evidence clearly is that Mr. Krupp was disabled. There are no new injuries. There were new results that had appeared at the time he filed his original petition. And we all know that as time goes on, sometimes things deteriorate and the results of the injuries aren't fully known until later on. And that's what was going on. And you recognized, obviously, that what you're doing here is asking us to reweigh the evidence right now. Right. That's not our province. We are to review the decision of the board to decide whether or not that decision is against the manifest way of the evidence. Right. And the law also says that you can, since there was virtually no testimony, this court is in as good a petition position to determine the validity and what's meant by these documentary things as the board is. And that this court can look at those documents, make its own determination. And I submit to you, Your Honor, that the board's conclusion on looking at these documents is entirely against the manifest way of the evidence and makes no sense whatsoever. When you say documents, you're obviously including the videos. Yeah, oh, absolutely. I guess my time is up unless there are further questions. Thank you. Thank you. Court is in recess. Thank the whole party for their arguments today. Thank you.